UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NINA IZRAILEVA,

      Plaintiff,

vs.                                                  Case No. 8:07-CV-21-T-27MSS

MICHAEL CHERTOFF, *et al.*,

      Defendants.
_____/

## ORDER

**BEFORE THE COURT** is the Report and Recommendation submitted by the Magistrate Judge recommending that (Dkt. 10) Defendants' Motion to Dismiss Complaint be denied. (Dkt. 19). Neither party filed written objections to the Report and Recommendation.

According to the Complaint, Plaintiff applied for naturalization on August 30, 2004 and was interviewed by U.S. Citizenship and Immigration Services ("CIS") on March 22, 2005. (Dkt. 1). Although Plaintiff received correspondence from CIS indicating that her application had been recommended for approval, by the time this action was filed on January 4, 2007, more than a year and a half had passed since Plaintiff's examination by CIS and CIS had not adjudicated Plaintiff's application. Plaintiff filed the instant action pursuant to 8 U.S.C. § 1447(b), requesting a hearing before the district court or, in the alternative, a "remand requiring Defendants to immediately adjudicate Plaintiff's naturalization application," because CIS had not adjudicated her application within 120 days of her examination by CIS, as required by § 1447(b). (Dkt. 1, ¶ 17).

On April 12, 2007, four months after this action was filed, CIS finally denied Plaintiff's application. (Dkt. 17, Exh. 1). In the Motion to Dismiss, Defendants contend that the adjudication rendered this action moot, depriving this Court of subject matter jurisdiction over Plaintiff's §1447(b) action. The Magistrate Judge concluded otherwise, relying on two Circuit Court decisions which have squarely addressed the issue.[1]

In both decisions relied on by the Magistrate Judge, those courts relied on the plain language of § 1447(b) and held that the filing of a § 1447(b) action vests exclusive jurisdiction in the district court. *United States v. Hovsepian*, 359 F.3d 1144, 1160 (9th Cir. 2004)("This wording shows that Congress intended to vest power to decide languishing naturalization applications in the district court alone, unless the court chooses to "remand the matter" to the INS, with the court's instructions."); *Etape v. Chertoff*, 497 F.3d 379, 384 (4th Cir. 2007)("In sum, the plain language of the statute clearly supports the applicants' position that proper filing of a §1447(b) petition provides a federal court with exclusive jurisdiction over a naturalization application."). Pursuant to these authorities, once a § 1447(b) action is filed, the CIS is stripped of jurisdiction over a naturalization application and its post suit adjudication of the naturalization application is effectively a nullity. *Etape v. Chertoff*, 497 F.3d at 388 ("[W]e hold that the CIS did not have jurisdiction to act when it denied Etape and Rahim's naturalization applications.").

This Court agrees with the Magistrate Judge that the reasoning in *Hovsepian*, an *en banc* decision of the Ninth Circuit, is sound. That Court thoroughly analyzed the statute and the Congressional intent evidenced by the plain language of the statute. In *Etape*, the Fourth Circuit

---

[1] As noted by the Magistrate Judge, the Eleventh Circuit has not addressed the issue.

likewise examined the language of the statute and agreed with *Hovsepian*. The Court in *Etape,* in addition to examining the language of the statute, considered "precedent directing the proper interpretation of such language, and the larger statutory context." 497 F.3d at 382. The reasoning and conclusions of *Hovsepian* and *Etape* are persuasive.[2]

In sum, this Court concludes that the plain language of §1447(b) and its legislative history confirms Congressional intent to strip CIS of jurisdiction if it does not adjudicate a naturalization application within 120 days of the applicant's examination. As recently observed by the Fifth Circuit, the language in § 1447(b) is virtually identical to that in the proposed 1989 version. *Walji v. Gonzales,* __ F.3d __, 2007 WL 2685028, at *5 (5th Cir. 2007)("When Congress later established a 120-day limit in 1990, it used virtually identical language as that used in the proposed 1989 legislation."). The Fifth Circuit quoted from a 1989 report of the Committee on the Judiciary which discussed the purpose of the proposed bill that would amend § 1447(b):

> Where there has been a failure to make a determination under [§ 1446] before the end of the 90-day period after the date on which the examination is conducted under such section, the United States district court for the district in which the applicant resides shall upon the demand of the petitioner exercise *exclusive* jurisdiction over the matter. H.R.Rep. No. 101-187, at 34 (1989)(*emphasis added*).

*Walji v. Gonzales,* 2007 WL 2685028, at *4.

The only other Circuit Court decision on the issue is *Kia v. U.S. Immigration & Naturalization Service,* No. 98-2399, 175 F.3d 1014 (4th Cir. Mar. 30, 1999). *Kia*, however, is an unpublished Fourth Circuit decision and was effectively overruled by that Circuit's decision in *Etape v. Chertoff, supra.*[3]

---

[2] The dissent in *Etape* concludes that § 1447(b) vests concurrent jurisdiction in the district courts. 497 F.3d 393.

[3] The Magistrate Judge correctly notes that *Kia* relied on a 9th Circuit decision which pre-dated *United States v. Hovsepian* and has therefore been effectively overruled by *Hovsepian*. Moreover, *Etape* was written by a Circuit Judge (J. Motz) who was on the *Kia* panel. Presumably, therefore, *Kia* has likewise been effectively overruled by *Etape*.

Not every failure of an agency to act within a time frame mandated by Congress strips the agency of its authority to act in an untimely manner. *See Brock v. Pierce County,* 476 U.S. 253, 260 (1986). In *Brock*, the Court reasoned that absent a clear indication in the statutory language or legislative history, "courts should not assume that Congress intended the agency to lose its power to act" in providing a time limit on agency action. 476 U.S. at 260. Since *Brock*, the Supreme Court has confirmed that rationale. *Barnhart v. Peabody Coal Co.,* 537 U.S. 149, 163 (2003)("Nor, since *Brock*, have we ever construed a provision that the Government "shall" act within a specified time, without more, as a jurisdictional limit precluding action later.")(citing *United States v. Montalvo-Murillo,* 495 U.S. 711, 714 (1990), *Regions Hospital v. Shalala,* 522 U.S. 448, 459 n. 3 (1998); and *United States v. James Daniel Good Real Property,* 510 U.S. 43, 63 (1993)("We have summed up this way: "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.")). The Court reasoned: "In each of these instances, we draw a conclusion on grounds of plausibility: if Congress had meant to set a counterintuitive limit on authority to act, it would have said more than it did, and would surely not have couched its intent in language *Brock* had already held to lack any clear jurisdictional significance." *Barnhart v. Peabody Coal Co.,* 537 U.S. at 163.

With respect to § 1447(b), Congress did say more. Unlike the statutory language construed in *Brock*, § 1447(b) expressly includes a "consequence" if CIS does not adjudicate a naturalization application in a timely manner.[4] When a § 1447(b) action is filed, jurisdiction is vested in the district

---

[4] The Supreme Court has recognized that "[m]any consequences . . . are intended to "induce an obligated person to take untimely action, rather than bar that action altogether." *Barnhart v. Peabody Coal Co.,* 537 U.S. 164, n.9. Absent the legislative history of § 1447(b) referenced above, a compelling argument could be made, as was made by Senior Judge Hamilton in his dissent in *Etape*, that §1447(b) was intended by Congress to "spur the CIS to take action," not to strip CIS of jurisdiction to take action:

court. *United States v. Hovsepian,* 359 F.3d at 1161("Further, § 1447(b) specifies a consequence for failure to meet this deadline, namely, that the district court gains jurisdiction over the matter . . .") That "consequence," as evidenced by the Judiciary Committee's report, reflects Congressional intent to create an enforcement bar" by vesting exclusive jurisdiction in the district court. Section 1447(b) is therefore an "effective jurisdiction-stripping statute." *Id.* The language of the statute operates as an express enforcement bar, rather than a less drastic remedy such as a judicial remedy to compel agency action. *See General Motors Corp. v. United States,* 496 U.S. at 541-42 ("When, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act.". . . "In the absence of a specific provision suggesting that Congress intended to create an enforcement bar, we decline to infer one.").

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of certain "Cases" and "Controversies." U.S. Const. art. III, § 2. The doctrine of mootness is derived from this limitation. *Adler v. Duval County School Bd.,* 112 F.3d 1475, 1477 (11th Cir. 1997). When a case is moot, the district court is divested of subject matter jurisdiction due to the lack of case or

---

       The logic of *Brock* and our Fourth Circuit jurisprudence applying *Brock* strongly suggests that when a statutory deadline for agency action written in mandatory terms is paired with a grant of jurisdiction to another if the agency fails to meet the deadline, courts should not assume that Congress intended a jurisdiction stripping consequence, especially when important public rights are at stake. Rather, in such a context courts should examine the normal indicia of congressional intent to determine whether Congress meant the statutory provision to be jurisdiction stripping. As I have already explained, examination of the normal indicia of congressional intent in regard to the statutory question before us clearly and consistently shows intent on the part of Congress to spur the CIS to action, but no intent on the part of Congress that a naturalization applicant's proper filing of a § 1447(b) petition in district court immediately and automatically divest the Attorney General of the authority the Immigration Act of 1990 statutorily conferred upon him to grant or deny applications for naturalization.
*Etape v. Chertoff,* 497 F.3d 379, 396 (Hamilton, Sr. Circuit Judge, dissenting.)

controversy. *Nat'l Adver. Co. v. City of Miami,* 402 F.3d 1329, 1332 (11th Cir.2005). Upon the filing of Plaintiff's § 1447(b) complaint, jurisdiction was exclusively vested in the district court. The subsequent adjudication of Plaintiff's naturalization application was therefore a nullity and did not render this action moot. This Court has subject matter jurisdiction. Defendants' Motion to Dismiss is therefore properly DENIED. Accordingly, it is

**ORDERED AND ADJUDGED**:

1) The Report and Recommendation (Dkt. 19) is adopted, confirmed, and approved in all respects and is made a part of this order for all purposes, including appellate review.

2) Defendants' Motion to Dismiss Complaint (Dkt. 10) is **DENIED**.

3) Defendants shall answer Plaintiff's Complaint within fifteen (15) days from the date of this Order.

4) The parties shall file a Case Management Report within twenty (20) days from the date of this Order.

**DONE AND ORDERED** in Tampa, Florida, on this 22nd day of October, 2007.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to:
Plaintiff *pro se*
Counsel of Record